IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KEVIN HOFFMAN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. Action No. 07-261-JJF |
| | : |
| CARL DANBERG, THOMAS CARROLL, | : |
| CORRECTIONAL MEDICAL SERVICES, | : |
| SCOTT ALTMAN, RICK KEARNEY, | : |
| ROBERT GEORGE, DR. DURST, | : |
| DR. VANDUSEN, REGISTERED NURSE | : |
| PAT, SUSSEX CORRECTIONAL | : |
| INSTITUTE MEDICAL STAFF, | : |
| NURSE PRACTITIONER, SUSSEX | : |
| VIOLATION OF PROBATION CENTER | : |
| MEDICAL STAFF, JAMES WELSH, | : |
| DELAWARE CORRECTIONAL CENTER | : |
| MEDICAL STAFF, and NURSE | : |
| PRACTITIONER SHERYL OTT, | : |
| | : |
| Defendants. | : |

Michael Kevin Hoffman, Pro se Plaintiff, Delaware Correctional Center, Smyrna, Delaware.

**MEMORANDUM OPINION**

July 3, 2007
Wilmington, Delaware

Farnan, District Judge

    Plaintiff Michael Kevin Hoffman ("Hoffman"), an inmate at the Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983. He appears pro se and was granted in forma pauperis status pursuant to 28 U.S.C. § 1915. (D.I. 4.)

    For the reasons discussed below, the Court will dismiss without prejudice the claims against Defendants Commissioner Carl Danberg, Warden Thomas Carroll, Scott Altman, Warden Rick Kearney, Dr. Durst, Dr. Vandusen, Registered Nurse Pat, Sussex Correctional Institute Medical Staff, Nurse Practitioner, Sussex Violation of Probation Center Medical Staff, James Welsh, Delaware Correctional Center Medical Staff, and Nurse Practitioner Sheryl Ott, as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Plaintiff will be allowed to proceed against Warden Robert George and Correctional Medical Services.

**I.   BACKGROUND**

    Plaintiff filed his original complaint (D.I. 2) on May 15, 2007. He filed a Motion To Amend/Correct Complaint (D.I. 13) on June 19, 2007, to add new Defendants. However, there was no need to file the Motion To Amend inasmuch as "[a] party may amend the party's pleading once as a matter of course at any time before a

responsive pleading is served", Fed. R. Civ. P. 15(a), and to date, a responsive pleading has not been served. Therefore the Court will construe the Motion to Amend as an Amended Complaint.[1] Plaintiff has also filed a Memorandum Of Law in support of his Complaint. (D.I. 11.)

Plaintiff alleges he is an HIV/chronic care patient. On June 22, 2006, Plaintiff was committed to the Sussex Violation of Probation Center ("SVOP"), Georgetown, Delaware. He alleges that the staff of Defendant Correctional Medical Services ("CMS") failed to provide treatment during the time he was at SVOP. Plaintiff alleges that when Defendant SVOP Warden Robert George ("Warden George"), became aware of his medical condition and situation he had Plaintiff transferred to the Central Violation of Probation Center ("CVOP"), Smyrna, Delaware to avoid the situation. Plaintiff alleges that medical appointments were scheduled at CVOP, but he never received any medical treatment because he was transferred to the Sussex Work Release Center ("SWRC"), Georgetown, Delaware, and once again was with Warden George. Plaintiff alleges that he remained at SWRC for five months without receiving medical treatment.

In October 2006, Plaintiff was charged with escape, and on November 9, 2006 he was committed to the Sussex Correctional

---

[1] The Clerk of the Court is directed to add to the Court Docket the following newly added Defendants: Scott Altman, James Welsh, Delaware Correctional Center Medical Staff, and Nurse Practitioner Sheryl Ott.

Institute ("SCI"), Georgetown, Delaware, where, Plaintiff alleges, CMS was aware of his chronic care condition. After submitting several medical requests Plaintiff was seen by Defendant Registered Nurse Pat ("RN Pat") who scheduled Plaintiff to see Defendant Dr. Durst ("Dr. Durst"). Plaintiff saw Dr. Durst in November 2006. Dr. Durst told Plaintiff he "was fine" and ordered blood analysis to take place in December 2006, but he did not place Plaintiff on anti-viral medications. Plaintiff alleges that when blood was drawn by Defendant Nurse Practitioner ("Nurse Practitioner") in December 2006, it was done in an unprofessional manner. Plaintiff wrote to Defendant Warden Rick Kearney ("Warden Kearney") complaining of the treatment he received by the Nurse Practitioner, but received no reply, whereupon he followed the institution's grievance procedure.

Plaintiff was transferred from SCI to the DCC on January 29, 2007. Plaintiff alleges he experienced "more severe complications" and submitted numerous sick call slips in an effort to receive treatment. He complained to medical staff about the lack of treatment. Plaintiff alleges he wrote to Defendant Commissioner Danberg ("Commissioner Danberg") regarding his medical treatment problems who advised him that Defendant Medical Director Jim Welsh ("Welsh") would investigate the matter. Plaintiff alleges the matter is still unresolved.

Plaintiff's blood was drawn on February 13, 2007, and he was

seen by Defendant Dr. Vandusen ("Dr. Vandusen") in March 2007. Dr. Vandusen prescribed Plaintiff several medications and scheduled an appointment for Plaintiff with Dr. McDonald. Dr. McDonald evaluated Plaintiff in April 2007, changed Plaintiff's medications, and scheduled a blood analysis for June 2007. Plaintiff alleges the DCC medical staff neglected his care and did not properly monitor his medical condition. Plaintiff alleges he attempted to address his medical concerns with Defendant Warden Carroll ("Warden Carroll"), who failed to address the unresolved issues. Plaintiff alleges he again contacted Commissioner Danberg complaining of neglect by the medical staff, and Commissioner Danberg replied that Welsh would investigate the matter. Plaintiff alleges that nothing has been done to resolve or correct the ongoing matter.

Plaintiff alleges that after several requests for medical attention, he was eventually seen by Defendant Nurse Practitioner Sheryl Ott ("Ott"). Plaintiff alleges that Ott told him she did not know how to treat his problems and advised him to address his needs during his next visit with a physician. Plaintiff also alleges that Ott, without proper authority, decreased medically ordered nutritional supplements. Finally, Plaintiff alleges he made a request to Commissioner Danberg that he been seen by a infectious disease specialist outside the institution, but Danberg never responded to the request. Plaintiff seeks

injunctive relief and compensatory damages.

## II. STANDARD OF REVIEW

When a litigant proceeds in forma pauperis, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the Court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact," Neitzke v. Williams, 490 U.S. 319, 325 (1989), and the claims "are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995).

In performing the Court's screening function under § 1915(e)(2)(B), the Court applies the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Fullman v. Pennsylvania Dep't of Corr., No. 4:07CV-000079, 2007 WL 257617 (M.D. Pa. Jan. 25, 2007) (citing Weiss v Colley, 230 F.3d 1027, 1029 (7th Cir. 2000). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. Erickson v. Pardus, -U.S.-, 127

S.Ct. 2197, 2200 (2007); <u>Christopher v. Harbury</u>, 536 U.S. 403, 406 (2002). Additionally, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, -U.S.-, 127 S.Ct. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). A complaint does not need detailed factual allegations, however "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> (citations omitted). Because Plaintiff proceeds <u>pro se</u>, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. <u>Erickson v. Pardus</u>, -U.S.-, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

**III. ANALYSIS**

    **A. Medical Needs**

    The Eighth Amendment proscription against cruel and unusual

-6-

punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. Estelle v. Gamble, 429 U.S. 97, 107 (1976). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. See Spruill v. Gillis, 372

F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Plaintiff's Complaint and Amended Complaint can be divided into three phases: medical care and treatment at the SVOP, CVOP and SWRC; medical care and treatment at the SCI; and medical care and treatment at DCC. Plaintiff's allegations while he was housed at SCI and DCC are, that he disagrees with the type of treatment he received and, that certain Defendants were negligent in providing medical treatment. It is evident in reading his Complaint, Amended Complaint, and Memorandum Of Law that Plaintiff received continuing medical care and treatment at both SCI and DCC, albeit, not to his liking. Plaintiff does not have a constitutional right to determine what type of treatment he receives. Nor do allegations of negligence rise to the level of a constitutional violation. With regard to Plaintiff's medical care and treatment at SCI and DCC, he has failed to state a claim upon which relief may be granted. Therefore, the Court will dismiss the claims against Defendants Commissioner Danberg, Warden Carroll, Warden Kearney, Dr. Durst, Dr. Vandusen, RN Pat, SCI Medical Staff, Nurse Practitioner, Welsh, DCC Medical Staff, and Ott as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

Plaintiff has stated what appears at this time to be cognizable claims against Warden George and CMS for delay/denial

of medical treatment.

### B. Personal Involvement/Respondeat Superior

Portions of Plaintiff's Complaint and Amended Complaint fail to adequately allege personal involvement on behalf of certain Defendants, while other Defendants apparently are named on the basis of their supervisory positions. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir. 1978)).

Plaintiff names as Defendants SCI Medical Staff, SVOP Medical Staff, and DCC Medical Staff. The Court finds that the SCI Medical Staff, SVOP Medical Staff, and DCC Medical Staff are not persons under § 1983 and are not proper party Defendants, and therefore, they will be dismissed as Defendants. Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973).

Moreover, as to the SCI Medical Staff and DCC Medical Staff, Plaintiff does not allege any Constitutional violation by any particular staff member. Thus, Defendants SCI Medical Staff and

DCC Medical Staff are clearly subject to dismissal. As discussed above, Plaintiff alleges he was not medically treated at SVOP, but the SVOP Medical Staff is not a proper party Defendant. It may be that at some point in time Plaintiff will identify individual SVOP Medical Staff members, and should that occur, Plaintiff has available the option of filing a motion to amend his Complaint to add those individuals.

Plaintiff has failed to adequately allege personal involvement on behalf of Defendant Altman or that Altman and/or Welsh violated Plaintiff's constitutional rights. Altman is mentioned only in the listing of Defendants, and there are no allegations of any wrongdoing by him. Plaintiff refers to Welsh as the individual designated by Commissioner Danberg to conduct an investigation of Plaintiff's complaints regarding medical treatment at DCC. However, as discussed above, the allegations are that Plaintiff's treatment at DCC did not rise to the level of a constitutional violation. Moreover, Welsh did not violate Plaintiff's constitutional rights by any alleged failure to communicate his investigative findings to Plaintiff.

Finally, it appears that Plaintiff seeks to hold Commissioner Danberg, Warden Carroll, Warden Kearney, and Altman liable based upon their supervisory positions. As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. See Monell v. Department of

Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. Id.; see Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed. Appx. 240 (3d Cir. 2005).

There is nothing in the complaint to indicate that the foregoing Defendants were the driving force behind Plaintiff's allegations. More so, the Complaint and Amended Complaint do not indicate that the supervisory Defendants were aware of the Plaintiff's allegations and remained "deliberately indifferent" to his plight. Sample v. Diecks, 885 F.2d at 1118. Indeed,

Plaintiff alleges that rather than ignore his complaints, some action was taken by these supervisory Defendants.

The claims against Defendants Altman, Welsh, SCI Medical Staff, SVOP Medical Staff, DCC Medical Staff, Commissioner Danberg, Warden Carroll, and Warden Kearney lack an arguable basis either in law or in fact. Accordingly, the Court will dismiss without prejudice the claims against the foregoing Defendants as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### IV. APPOINTMENT OF COUNSEL

Plaintiff contends that appointed counsel is appropriate because he is unable to afford counsel, the issues in the case are complex, and if proven, his allegations will establish a constitutional violation. (D.I. 5.) Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). Nonetheless, district courts have statutory authority to appoint counsel for indigent civil litigants at any time during the litigation. 28 U.S.C. § 1915(e)(1) (providing that "[t]he court may request an attorney to represent any person unable to afford counsel"); Montgomery v. Pinchak, 294 F.3d 492, 504 (3d Cir. 2002). Section 1915(e)(1) affords district courts broad discretion in determining whether appointment of counsel in

a civil case is appropriate. Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993).

When evaluating a motion for the appointment of counsel filed by a pro se plaintiff, initially, the Court must examine the merits of the plaintiff's claim to determine whether it has some arguable merit in fact and law. See Parham, 126 F.3d at 457 (citing Tabron, 6 F.3d at 157). If the case has arguable merit the Court should proceed to consider (1) Plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the extensiveness of the factual investigation necessary to effectively litigate the case and Plaintiff's ability to pursue such an investigation; (4) the degree to which the case may turn on credibility determinations; (5) whether the testimony of expert witnesses will be necessary; and (6) whether Plaintiff can attain and afford counsel on his own behalf. See Parham, 126 F.3d at 457-58 (citing Tabron, 6 F.3d at 155-56, 157 n.5). The list of factors is not exhaustive.

The Court assumes solely for the purpose of deciding the pending motion, that Plaintiff's claims have arguable merit, and will, therefore, consider the factors articulated in Parham and Tabron. Keeping in mind the practical considerations cited above and exercising the broad discretion offered the Court, the Court concludes that the appointment of counsel is not warranted at this time.

Plaintiff proceeds *in forma pauperis* and it appears, therefore, he is unable to afford legal representation. Plaintiff has demonstrated the ability to present his own case. His filings are comprehensible and demonstrate some knowledge of the legal system. While he does have a medical claim, at this juncture it is not evident that expert testimony will be required. Accordingly, the Court will deny without prejudice, Plaintiff's Motion For Appointment of Counsel. (D.I. 5.)

**V.   DISCOVERY**

Plaintiff seeks discovery under Rule 26(a) of the Federal Rules of Civil Procedure. (D.I. 6.) Rule 26(a) provides for initial discovery disclosures. Plaintiff is advised that excluded from Rule 26 are, as in this case, actions brought without counsel by a person in custody. Fed. R. Civ. P. 26(a)(1)(E)(iii). A discovery schedule will be implemented at a later time.

Plaintiff also seeks discovery through issuance of a subpoena pursuant to Fed. R. Civ. P. 45. (D.I. 10.) The Court construes the subpoena as a request for service of a subpoena *duces tecum*. The subpoena is directed to Commissioner Danberg, who until today, was a Defendant in this case. By Order of the same date as this Memorandum Opinion, Commissioner Danberg will be dismissed from this case. Inasmuch as Commissioner Danberg is a non-party, issuance of a subpoena is the proper method for

obtaining discovery from him. The Court notes that Plaintiff proceeds in forma pauperis, and there are specific provisions in § 1915(d) requiring officers of the federal court to issue and serve all process, and perform all duties in such cases brought by in forma pauperis litigants. 28 U.S.C. § 1915(d); Woodham v. Sayre Borough Police Dep't, 191 Fed. Appx. 111 n.2 (3d Cir. 2006). The Complaint has yet to be served. Therefore, the Clerk of Court shall wait until service is complete upon both remaining Defendants to issue the subpoena to Commissioner Danberg. Once service is complete, the subpoena shall issue immediately. Plaintiff is advised that it may be the medical documents sought from Commissioner Danberg are available from the remaining Defendants.

## VI. CONCLUSION

For the reasons discussed above, the Court will construe the Motion To Amend/Correct Complaint (D.I. 13) as an Amended Complaint. The Court will dismiss the claims against all Defendants, save Warden George and CMS, without prejudice for failure to state a claim upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The Court will allow Plaintiff to proceed with his medical needs claim against Defendants Warden George and CMS. The Court will deny Plaintiff's Motion For Appointment of Counsel. The Court will direct the Clerk of Court to issue the

subpoena once service has been effected upon Defendants Warden George and CMS. An appropriate Order will be entered.